IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

PORTLAND DIVISION

FU GEN J. SCHMELZER,

        Plaintiff,

    v.                                 No. CV-10-1445-HZ

WELLS FARGO HOME MORTGAGE,
a foreign corporation, WELLS FARGO
BANK, a foreign corporation, THE BANK
OF NEW YORK MELLON, as administrator
for the Bear Stearns Asset-Backed
Securities Trust 2007-1, a special purpose
investment vehicle, JOHN AND JANE           OPINION & ORDER
DOES, individuals, corporations, and any
other form of legal entity 1 through infinity,
unknown Defendants, NORTHWEST
TRUSTEE SERVICES, INC., a foreign
corporation,

        Defendants.

/ / /

/ / /

1 - OPINION & ORDER

David Richardson
Christopher Schwindt
SCHWINDT RICHARDSON LLC
621 S.W. Morrison, Suite 700
Portland, Oregon 97205

       Attorneys for Plaintiff

Pilar C. French
Dominic G. Colletta
LANE POWELL PC
601 S.W. Second Avenue, Suite 2100
Portland, Oregon 97204-3158

       Attorneys for Defendants

HERNANDEZ, District Judge:

      Plaintiff Fu Gen J. Schmelzer brings this foreclosure-related action against defendants

Wells Fargo Home Mortgage, Wells Fargo Bank, The Bank of New York Mellon, and John and

Jane Does "1 through infinity."[1]  Plaintiff brings fourteen claims, all related to a loan she received

in 2005 from Wells Fargo Bank, secured by a Deed of Trust (DOT) on certain real property.

      Defendants[2] move to dismiss all claims for failure to state a claim.  I grant the motion in

part and deny it in part.

BACKGROUND

      In August 2005, plaintiff obtained a mortgage loan from Wells Fargo Bank.  Compl. at ¶

11.  The DOT, appended to the Complaint, states that the promissory note, which is not

submitted with the Complaint, was dated August 4, 2005, and was for the principal sum of

---

    [1]  Plaintiff voluntarily dismissed defendant Northwest Trustee Service in January 2011.

    [2]  The moving defendants do not include the John and Jane Does and my references in
this Opinion to "defendants" similarly exclude them.

2 - OPINION & ORDER

$332,500.  Ex. A to Compl.[3]   The terms of the loan included an adjustable interest rate, initially

set at 6.5 percent, with total monthly payments of $2,101.63.  Compl. at ¶ 11.

The DOT, signed by plaintiff on August 5, 2005, identifies plaintiff as the borrower,

Wells Fargo Bank as the lender, and Fidelity National Title Insurance Company as the Trustee.

Ex. A to Compl.  It was recorded in Multnomah County on August 20, 2005.  Id.

At some point, the interest on plaintiff's loan became 9.375 percent, raising her monthly

payment to $2,738.02.  Compl. at ¶ 12.  Sometime thereafter, plaintiff experienced difficulty

making her mortgage payments and contacted Wells Fargo Home Mortgage for a loan

modification.  Id. at ¶ 13.

At this point, her allegations become difficult to follow.  Although she contends that

Wells Fargo twice agreed to modify her mortgage, she identifies only an April 2009 modification

and it is unclear what other modification she refers to.  Compl. at ¶¶ 14, 15.  In regard to the

---

[3] Plaintiff refers to and incorporates by reference the following documents appended to the Complaint:  (1) the DOT (Ex. A); (2) a Notice of Default and Election to Sell (Ex. B); and (3) Assignment of Deed of Trust (Ex. C).  Because these were all recorded in Multnomah County, they are public records and appropriate for consideration in the context of a Rule 12(b)(6) motion.  E.g., Dunn v. Castro, 621 F.3d 1196, 1204 n.10 (9th Cir. 2010) (when considering a Rule 12(b)(6) motion, district court generally may not take into account material beyond the complaint, but exceptions are made for matters of which the court may take judicial notice, and documents the plaintiff "incorporates by reference"); Coto Settlement v. Eisenberg, 593 F.3d 1031, 1038 (9th Cir. 2010) (in Rule 12(b)(6) motion court "may consider materials incorporated into the complaint or matters of public record").

Additionally, defendants request that I take judicial notice of the DOT [dkt #20].  Under Federal Rule of Evidence 201, judicial notice of the Deed of Trust is appropriate.

Plaintiff also attaches several documents to her Response Memorandum.  These are primarily letters and other documents sent to plaintiff by Wells Fargo Home Mortgage regarding her loan, loan modifications, and forbearances.  She also includes "Transaction Records" of several payments made at Wells Fargo Bank.  I do not consider these documents in resolving the motion because the documents are not appended to the Complaint and they do not meet the criteria for judicial notice under Rule 201.

3 - OPINION & ORDER

April 2009 modification, she contends that it was the "most recent modification agreement, which capitalized into the loan many of the predatory fees charged by Wells Fargo over the past three years." Id. at ¶ 15. She contends that she signed and returned the April 2009 modification agreement and made the required payments. Id. Nonetheless, Wells Fargo allegedly breached and repudiated the agreement. Id. She contends that Wells Fargo "unilaterally set a new payment amount and likely assessed Plaintiff fees for its own decision to repudiate the agreement." Id.

      Without reciting any specific dates, plaintiff contends that generally, if she missed a payment or was denied a loan modification, Wells Fargo encouraged her to apply for a new modification and to begin a new forbearance plan. Id. at ¶ 16. At the same time, Wells Fargo "several times" told her not to make a payment because a forbearance/modification request was pending. Id. She generally asserts that Wells Fargo purposefully encouraged her to keep re-applying and intentionally strung her along with promises of a workable loan modification in order for Wells Fargo to generate additional fees, when Wells Fargo knew all along that the proposed modifications were never realistic for plaintiff. See Id. at ¶¶ 13-17.

      On December 3, 2009, Wells Fargo Bank transferred its interest in the DOT to The Bank of New York Mellon, "fka The Bank of New York as Trustee for Bear Stearns Asset Backed Securities Trust 200-1, Asset-Backed Certificates, Series 2007-1[.]" Ex. C to Compl. An assignment of the DOT reflecting the transfer was recorded in Multnomah County on December 4, 2009. Id.

      Plaintiff makes several allegations regarding the "Asset-Backed Certificates" and the assignment from Wells Fargo Bank to The Bank of New York Mellon. Compl. at ¶¶ 23-29. She

4 - OPINION & ORDER

contends that a "Pooling and Servicing Agreement" (PSA), controls the mortgage-backed

securities trust and that the trust at issue in this loan is controlled by a PSA dated January 1,

2007.  Id. at ¶ 23.  She alleges that under the terms of this PSA, the assignment from Wells Fargo

Bank to The Bank of New York Mellon was invalid, and further, that mortgage products for this

particular trust could not be accepted by The Bank of New York Mellon after January 1, 2007.

Id. at ¶¶ 24, 25.  Further, she alleges that because the PSA prevents The Bank of New York

Mellon from accepting mortgages that are in default, the assignment from Wells Fargo Bank is

void.  Id. at ¶ 26.

Plaintiff alleges that despite making payments on the loan, defendants declared her to be

in default and initiated foreclosure proceedings against her.  Id. at ¶ 18; Ex. B to Compl.  She

alleges that between January 2007 and June 2009, she made payments totaling $61,643.82.  Id.

She also alleges that since July 2008, she made $27,000 in payments.  Id. at ¶ 17.  The Complaint

is unclear whether the $27,000 she refers to is part of, or in addition to, the $61,643.82.

A Notice of Default and Election to Sell (NODES) was recorded in Multnomah County

on August 19, 2010.  Ex. B to Compl.  It states that plaintiff was in default as of August 1, 2008,

having failed to make monthly payments of $3,450.99 since that date.  Id.  She also owed late

charges of $125.57 per month since August 16, 2008, plus advances of $1,392.47 representing

previous inspection and attorney's fees.  Id.  By reason of default, all sums were declared

immediately due  and payable, so that at the time the NODES was filed, plaintiff owed

$322,569.42, with interest at the rate of 8.375 percent per year beginning July 1, 2008, plus the

late charges, advances, and other expenses incurred by reason of the default.  Id.  The NODES

states that a sale would occur on December 27, 2010 at 10 a.m.  Id.  The parties agree that the

foreclosure has since been canceled.  Pltf's Resp. at pp. 14, 22.

STANDARDS

On a motion to dismiss, the court must review the sufficiency of the complaint.  Scheuer

v. Rhodes, 416 U.S. 232, 236 (1974).  All allegations of material fact are taken as true and

construed in the light most favorable to the nonmoving party.  American Family Ass'n, Inc. v.

City & County of San Francisco, 277 F.3d 1114, 1120 (9th Cir. 2002).  However, the court need

not accept conclusory allegations as truthful.  Holden v. Hagopian, 978 F.2d 1115, 1121 (9th Cir.

1992).

A motion to dismiss under Rule 12(b)(6) will be granted if plaintiff alleges the "grounds"

of his "entitlement to relief" with nothing "more than labels and conclusions, and a formulaic

recitation of the elements of a cause of action[.]"  Bell Atlantic Corp. v. Twombly, 550 U.S. 544,

555 (2007).  "Factual allegations must be enough to raise a right to relief above the speculative

level, . . . on the assumption that all the allegations in the complaint are true (even if doubtful in

fact)[.]"  Id. (citations and footnote omitted).

To survive a motion to dismiss, the complaint "must contain sufficient factual matter,

accepted as true, to state a claim to relief that is plausible on its face[,]" meaning "when the

plaintiff pleads factual content that allows the court to draw the reasonable inference that the

defendant is liable for the misconduct alleged."  Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949 (2009)

(internal quotation omitted).  Additionally, "only a complaint that states a plausible claim for

relief survives a motion to dismiss."  Id. at 1950.  The complaint must contain "well-pleaded

facts" which "permit the court to infer more than the mere possibility of misconduct."  Id.

/ / /

6 - OPINION & ORDER

DISCUSSION

Based on the above facts, plaintiff brings the following claims:  (1) declaratory judgment;
(2) injunctive relief; (3) slander of title against all defendants; (4) breach of contract against
Wells Fargo Bank and Wells Fargo Home Mortgage; (5) breach of the implied covenant of good
faith and fair dealing against all defendants; (6) "unconscionable actions" against all defendants;
(7) fraud against all defendants; (8) improper default/foreclosure notice under Oregon Revised
Statute § (O.R.S.) 86.735 against all defendants; (9) unlawful foreclosure against all defendants;
(10) unlawful debt collection practices - Oregon law, against all defendants; (11) unlawful debt
collection practices - federal law, against all defendants; (12) unjust enrichment against all
defendants; (13) unlawful trade practices against all defendants; and (14) intentional infliction of
emotional distress against all defendants.

In responding to the motion to dismiss, plaintiff acknowledges that defendants have
canceled the foreclosure action.  Pltf's Resp. Mem. at pp. 14, 22.  As a result, she dismisses her
Second Claim for Relief seeking injunctive relief and her Ninth Claim for Relief of "Unlawful
Foreclosure."  Id.  She also dismisses, "in the interest of judicial economy," her Sixth Claim for
Relief for "Unconscionable Actions" and her Seventh Claim for Relief for fraud.  Id. at p. 19.  At
oral argument, she further dismissed her Third Claim for Relief for "Slander of Title."

Plaintiff's Eighth Claim for Relief for "Improper Default/Foreclosure Notice," alleges that
defendants violated the Oregon Trust Deed Act, O.R.S. 86.705 - 86.795, by (1) having an
improperly appointed successor trustee institute the foreclosure action; (2) having no ability to
foreclose on plaintiff's property because the assignment of the DOT was invalid; (3) having no
ability to foreclose without possessing the original promissory note; (4) instituting the current

7 - OPINION & ORDER

foreclosure action without being the real parties in interest; and (5) failing to obtain or disclose

the proper authority to foreclose.  Compl. at ¶ 84.  This claim concerns the propriety of what was

an impending foreclosure.  As plaintiff concedes, that foreclosure has now been canceled.  The

Eighth Claim for Relief is therefore dismissed as moot.

I will address the remaining eight claims in the order in which they are pled.

I.  Declaratory Judgment

Pursuant to the Oregon Uniform Declaratory Judgment Act, O.R.S. 28.010 - 28.160,

plaintiff seeks a declaration that defendants have no legal or equitable rights in plaintiff's

property, promissory note, or DOT for purposes of foreclosure or otherwise and that defendants

have no right, capacity, or legal standing to institute or maintain any foreclosure on the property.

Compl. at ¶ 33; see also Id. at ¶ 44.

Defendants argue that the claim must be dismissed because there is no actual controversy.

See Green v. Cox, 44 Or. App. 183, 186, 605 P.2d 1198, 1199 (1980) (elements of a declaratory

relief action under Oregon law are (1) a justiciable controversy (2) between adverse parties, (3)

where the party seeking relief has a legally protectible interest and (4) the claim is ripe).

As seen in the discussion below, I dismiss the majority of plaintiff's claims.  Remaining

in the case at this time are a breach of contract claim regarding the April 2009 loan modification

and portions of the two debt collection practices claims.  These claims provide no basis for

plaintiff to obtain a declaration that defendants have no interest in her property because the

claims do not present an actual controversy about defendants' lack of a beneficial interest in the

property.  Even if plaintiff prevails on the debt collection practices claims, which are based on an

underlying contention by plaintiff that the assignment from Wells Fargo Bank to The New York

8 - OPINION & ORDER

Bank Mellon is invalid, the beneficial interest in the property would, presumably, revert back to

Wells Fargo Bank as the original beneficiary and as the assignor of the interest to The New York

Bank Mellon.  Thus, prevailing on the debt collection practices act claims would not warrant a

declaration that <u>all</u> defendants have <u>no</u> rights in the property, the note, or the DOT, and have no

ability to initiate a foreclosure.  Based on the allegations surviving this motion, some or all of the

defendants retain an interest in the property.  Accordingly, this claim is dismissed.

## II.  Breach of Contract

To establish a breach of contract claim, plaintiff "must allege the existence of a contract,

its relevant terms, plaintiff's full performance and lack of breach and defendant's breach resulting

in damage to plaintiff."  <u>Slover v. Or. St. Bd. of Clinical Soc. Workers</u>, 144 Or. App. 565, 570-

71, 927 P.2d 1098, 1101 (1996) (internal quotation omitted).

The breach of contract claim is brought against the two Wells Fargo defendants.  As with

all aspects of the Complaint, the allegations pleaded in support of the claim are not very clear,

but as I understand the claim, it addresses the alleged breach of the April 2009 loan modification.

In support of that claim, plaintiff contends that she and "defendants" entered into a loan

modification agreement dated April 2, 2009.  Compl. at ¶ 60.[4]  According to plaintiff, defendants

approved plaintiff for the modification and mailed the agreement to her to sign and return within

---

[4] This is but one example of plaintiff's imprecise pleading.  Although she states that she and "defendants" entered into the loan modification, her own exhibits attached to the Complaint show that Wells Fargo Bank did not transfer its interest in the DOT to The Bank of New York Mellon until December 2009.  Accordingly, The Bank of New York Mellon could not have been a party to the April 2009 loan modification.  Additionally, the allegations are unclear as to whether she negotiated the modification with Wells Fargo Bank (the lender) or Wells Fargo Home Mortgage (the servicer).  Any amendment to the Complaint should specify which Wells Fargo defendant the loan modification agreement was negotiated with and which Wells Fargo defendant allegedly breached the agreement.

9 - OPINION & ORDER

seven days of receipt.  Id.  Plaintiff received the agreement on April 6, 2009, signed it, and returned it by overnight express on April 10, 2009.  Id.  She contends that the new loan amount of $366,210.35 was greater than the original loan of $332,500 because defendants "rolled many of their improper fees" into the loan.  Id.  With a 7.5 percent interest rate, the new monthly payments of principal, interest, and escrow were $3,183.84.  Id.  Plaintiff made a $694.84 initial deposit, as required, before making a $3,183.84 payment in June 2009.  Id.

Plaintiff contends that she could have made all the payments under the agreement except that Wells Fargo immediately breached and repudiated the agreement.  Id.  She alleges that in July 2009, Wells Fargo told her that no agreement had been made due to her failure to timely return the documents.  Id. at ¶ 61.  She attempted to appeal the decision and demonstrate through mailing receipts that Wells Fargo had in fact received the documents within the seven-day deadline.  Id.  She contends that in response, Wells Fargo asked her to apply for a new modification, starting the process over again after "so many other attempts over two years."  Id.

Defendants argue that the claim must be dismissed because the facts do not support the existence of a binding contract.  Defendants argue that plaintiff's allegations are confusing and contradictory because on the one hand, she asserts that the loan modification agreement contained improper terms such as the "improper fees" with which she did not agree, yet on the other hand, she asserts that she agreed to and performed the agreement.  As such, defendants contend that the allegations fail to show that there was ever a meeting of the minds sufficient to establish a binding contract.

I agree with defendants that the pleading of the claim is convoluted, but I disagree that the allegations are so inherently contradictory as to preclude plaintiff from stating a claim that there

10 - OPINION & ORDER

was a valid, binding loan modification agreement.   I find that the Complaint sufficiently alleges the existence of a contract in the April 2009 agreement to modify her loan, the relevant terms of payment, that plaintiff performed her obligations, and that defendants breached the agreement.[5]

Plaintiff also alleges damages.   She contends that as a result of the breach of the loan modification agreement, she has suffered at least $422,000 in damages consisting of $407,000 in accelerated debt, interest, "extraordinary" bank and servicing fees, and $15,000 in attorney's fees. Compl. at ¶ 62.   She also states she has suffered emotional distress and will seek punitive damages.  Id.  Emotional distress and punitive damages are not available in a breach of contract claim.  See BNSF Ry. Co. v. Albany & E. R.R. Co., 741 F. Supp. 2d 1184, 1204  (D. Or. 2010) (punitive damages not available in contract actions); Barton v. Hartford Ins. Co. of the Midwest, No. CV–03–6164–TC, 2005 WL 174849, at *4 n. 6 (D. Or. Jan. 25, 2005) (court rejected argument that tort damages can be awarded upon a finding of a breach of contract), adopted as modified, 2005 WL 758255 (D. Or. Apr. 1, 2005).

Moreover, it is unclear how plaintiff is entitled to attorney's fees.  It is also unclear how the breach of the loan modification agreement would entitle her to the $407,000 she apparently owes on the loan.  While the alleged breach may have triggered some late fees or interest that otherwise would not have accrued, how the alleged breach would result in damages to her in the amount of her outstanding balance makes no sense.  Because, however, she contends that some

---

[5]  At oral argument, defendants argued that the breach of contract claim must be dismissed because of the failure on the face of the Complaint to demonstrate plaintiff's consideration for entering into the loan modification, and because of problems with the statute of frauds.  Because these arguments were raised for the first time at oral argument, I decline to consider them.  Furthermore, on a motion to dismiss, plaintiff's allegations are sufficient to state a claim that there was a binding loan modification between plaintiff and a Wells Fargo defendant.

of the damages are bank and servicing fees, I conclude that she has stated a claim for breach of the April 2009 loan modification agreement.

In her Response Memorandum, plaintiff argues that she has stated a claim for breach of the original loan by accepting the loan terms in August 2005, fully performing the terms of the loan, and then somehow being a victim of defendants' predatory lending, with a breach of the loan when defendants failed to offer her a loan modification and charged her improper fees. I agree with defendants that to the extent the breach of contract claim is premised on anything other than a breach of the April 2009 loan modification, it must be dismissed for failure to state a claim.

First, the breach of contract allegations in the Complaint do not refer to the original loan agreement. They are directed solely to the loan modification. Compl. at ¶¶ 59-62. Second, plaintiff's assertion that she fully performed the terms of the original loan is contradicted by the other allegations in the Complaint that she had trouble making her payments and that she sought a loan modification. While she contends she made payments after the date of the August 1, 2008 default, she never alleges that she has made all the payments required under whatever agreement was in place at the time. She cannot then assert that she fully performed the terms of the loan.

More importantly, the allegations are simply too confusing and convoluted to tease out a claim based on the original loan. Furthermore, if she alleges that the original loan was breached because defendants failed to offer her a loan modification or charged her inappropriate fees, she fails to cite to the relevant terms of the loan agreement which governed defendants' actions in this regard. As discussed infra, the DOT gives defendants the right to refuse to modify the loan and the right to charge certain fees. Plaintiff fails to articulate the basis for any viable breach of

12 - OPINION & ORDER

contract claim other than the breach of the April 2009 loan modification agreement.    Thus, other

than the breach of that agreement, this claim is dismissed.

III.  Breach of the Implied Duty of Good Faith and Fair Dealing

       The basis of this claim is unclear because, as with the other claims, the allegations are not

specific as to dates of alleged actions, parties, or the contractual relationship.  In support of this

claim, plaintiff first focuses on the relationship she had with "Wells Fargo" under the "mortgage

loan agreement."  I understand plaintiff to refer to the original August 2005 mortgage loan.  She

also mentions the "modification agreement," which I understand refers to the April 2009

modification.  Compl. at ¶ 64.  She alleges that over the period of three years of the original

agreement and the modification agreement, Wells Fargo failed to take action or to timely respond

to her continuing requests for a loan modification or other workable solution.  Id.  Defendants

placed her into a position that resulted in default and then acted to keep her in default while

charging excessive bank fees and encouraging her to continue applying for assistance.  Id.

       Next, plaintiff makes the following allegation:  "Defendants NY Mellon, Trust, John and

Jane Does, and NW Trustee Services accepted Plaintiff's delinquent or defaulting note and DOT,

which goes against the provisions of the controlling PSA and violates that covenant of good faith

and fair dealing."  Id. at ¶ 65.  She further alleges that "[t]hese Defendants also immediately

brought a foreclosure action against Plaintiff's home after executing and recording an authorized,

false, or fraudulent Assignment and foreclosure notices."  Id.  She contends that "these actions

breach their duty of good faith and fair dealing, implied in those contracts, to first secure

performance and enforcement of the agreements in accordance with their substantive terms."  Id.

       As I understand these very confusing allegations, plaintiff appears to allege that Wells

13 - OPINION & ORDER

Fargo breached the duty of good faith and fair dealing implied in the original loan agreement and in the April 2009 loan modification, by failing to promptly enter into a loan modification with her and by charging her excessive fees.   The allegations in paragraph 65 are harder to discern and her reference to "those contracts" is unclear.   It appears that she alleges that the remaining defendants breached the duty of good faith and fair dealing implied in the note, the DOT, and/or the PSA as a result of the assignment of the DOT from Wells Fargo to The New York Bank Mellon and by initiating a foreclosure.

"[S]o long as it is not inconsistent with the express terms of a contract, the duty of good faith and fair dealing is a contractual term that is implied by law into every contract." Eggiman v. Mid-Century Ins. Co., 134 Or. App. 381, 386, 895 P.2d 333, 335 (1995) (internal quotation omitted); see also Best v. U.S. Nat'l Bank of Or., 303 Or. 557, 561, 739 P.2d 554, 557 (1987) (court has long recognized that there is an obligation of good faith in the performance and enforcement of every contract).   The contractual good faith doctrine is designed to "effectuate the reasonable contractual expectations of the parties." Best, 303 Or. at 563, 739 P.2d at 558; see also Klamath Off-Project Water Users, Inc. v. Pacificorp, 237 Or. App. 434, 445, 240 P.3d 94, 101 (2010) (common law implied duty of good faith and fair dealing serves to effectuate the objectively reasonable expectations of the parties).

The purpose of the duty of good faith is to prohibit improper behavior in the performance and enforcement of contracts, and to ensure that the parties "will refrain from any act that would 'have the effect of destroying or injuring the right of the other party to receive the fruits of the contract.'" Iron Horse Eng'g Co. v. Nw. Rubber Extruders, Inc., 193 Or. App. 402, 421, 89 P.3d 1249, 1259 (2004) (quoting Perkins v. Standard Oil Co., 235 Or. 7, 16, 383 P.2d 107 (1963)).

The duty "does not operate in a vacuum[;]" rather it "focuses on the agreed common purpose and the justified expectations of the parties, both of which are intimately related to the parties' manifestation of their purposes and expectations in the express provisions of the contract." Or. Univ. Sys. v. Or. Pub. Emp. Un, 185 Or. App. 506, 515-16, 60 P.3d 567, 572 (2002). The duty "cannot contradict an express contractual term, nor does it provide a remedy for an unpleasantly motivated act that is permitted expressly by the contract." Stevens v. Foren, 154 Or. App. 52, 58, 959 P.2d 1008, 1011 (1998). Additionally, in the absence of a contract between the plaintiff and the defendant, a plaintiff cannot bring a claim for breach of the covenant of good faith and fair dealing. Davis v. Pacific Saw & Knife Co., No. CV-08-676-HU, 2008 WL 4319981, at *2 (D. Or. Sept. 16, 2008) .

Defendants move against the claim, arguing that plaintiff's allegations are that defendants have breached terms of the loan agreement and thus, there is no breach of an implied duty claim when defendants have acted pursuant to the express terms of the contractual documents.

The only contracts to which plaintiff is a party are the note, the DOT, and the April 2009 loan modification agreement. Thus, any claim based on an implied duty arising in the PSA is not valid.

Additionally, the allegations in paragraph 65 directed to the non-Wells Fargo defendants cannot support an implied duty of good faith claim. First, to the extent the claim is based on the foreclosure process, it is moot in light of the cancellation of the foreclosure. Second, to the extent it is based on the assignment from Wells Fargo to The New York Bank Mellon, it fails to state a claim because such a claim would contradict an express provision of the contract. Ex. A to Compl. at ¶ 20 (the DOT expressly allows Wells Fargo to assign its interest in the property to

a successor beneficiary with this language: "The Note or a partial interest in the Note (together

with this Security Instrument) can be sold one or more times without prior notice to Borrower.").

Remaining is the part of the claim based on Wells Fargo's alleged breach of the duty by

failing to promptly offer a reasonable loan modification and by charging excessive fees.

However, the DOT expressly requires plaintiff to pay the principal and interest due on the debt

evidenced by the note, and any "late charges due under the Note." Ex. A to Compl. at ¶ 1. It also

provides that the lender may charge plaintiff for fees for services performed in connection with a

default, such as attorney's fees and property inspection and valuation fees. Id. at ¶ 14.

Additionally, as to the modification, if the lender extends time for payment or modifies the

amortization of the sums secured by the DOT, such action does not "operate to release the

liability" of plaintiff. Id. at ¶ 12. Moreover,

> [l]ender shall not be required to . . . modify amortization of the sums secured by
> this Security Instrument by reason of any demand made by the original Borrower
> or any Successors in Interest of Borrower. Any forbearance by Lender in
> exercising any right or remedy including, without limitation, Lender's acceptance
> of payments from third persons, entities, or Successors in Interest of Borrower or
> in amounts less than the amount then due, shall not be a waiver of or preclude the
> exercise of any right or remedy.

Id.

As can be seen, express language in the original loan agreement governs the parties'

contractual relationship regarding a duty to offer a modification and the right to charge fees. An

implied duty of good faith claim cannot contradict an express provision of the contract, even if

plaintiff believes that defendants were "unpleasantly motivated" in their actions. Thus, the claim

as interpreted here, must be dismissed. To the extent plaintiff wishes to replead this claim in an

Amended Complaint, plaintiff must more precisely identify the actual contract at issue, the

parties to the contract, the basis of the implied duty of good faith and fair dealing in that contract,

the specific conduct which allegedly breached that duty, and how the alleged actions injured or

destroyed some right or expectation plaintiff possesses under the contract.   Without such

allegations, the claim will remain subject to dismissal for failure to state a claim.

IV.  Unlawful Debt Collection Practices Claims

Defendants argue that both of these claims must be dismissed because under either

statute, they are not debt collectors.  They further argue that under the Oregon statute, plaintiff

fails to allege that defendants engaged in any of the fifteen specified wrongful acts provided for

in that statute or alternatively, the allegations are simply a "parroting" of the various sections of

the statute which does not support a claim.

A.  Federal Fair Debt Collection Practices Act (FDCPA)

Plaintiffs concede that Wells Fargo Bank is not a debt collector under the FDCPA

because Wells Fargo Bank originated the debt.  Pltf's Resp. Mem. at p. 23.  However, she

contends that Wells Fargo Home Mortgage and The Bank of New York Mellon are debt

collectors under the statute.  Plaintiff's FDCPA claim is grounded in her belief that The Bank of

New York Mellon does not have a beneficial interest in the DOT, and thus, violated the FDCPA

by attempting to foreclose on the property.  Compl. at ¶ 95.  Although she also alleges that

"defendants" cannot foreclose without properly evaluating her application for a modification, I

disregard this contention because it is conclusory.[6]

---

[6] Plaintiff's imprecision is seen again here.  She states that all defendants committed
unfair debt collection practices in the foreclosure process but, at the time of the foreclosure,
Wells Fargo Bank no longer possessed an interest in the property by virtue of having assigned its
interest to The New York Bank Mellon, and Wells Fargo Home Mortgage does not appear to
have been involved in the foreclosure process.  Instead, the NODES shows that The Bank of New

Defendants argue that assignees of a loan are not debt collectors.  Under the FDCPA, a

"debt collector" is

> any person who uses any instrumentality of interstate commerce or the mails in
> any business the principal purpose of which is the collection of any debt, or who
> regularly collects or attempts to collect, directly or indirectly, debts owed or due
> or asserted to be owed or due another.

15 U.S.C. § 1692a(6).

Cases uniformly hold that an assignee of a beneficial interest in the mortgage, such as The

New York Bank Mellon, are not debt collectors under the FDCPA.  E.g., Perry v. Stewart Title

Co., 756 F.2d 1197, 1208 (5th Cir. 1985) ("The legislative history of section 1692a(6) [defining

debt collector] indicates conclusively that a debt collector does not include the consumer's

creditors, a mortgage servicing company, or an assignee of a debt, as long as the debt was not in

default at the time it was assigned"); Radford v. Wells Fargo Bank, No. 10-00767, 2011 WL

1833020, at *15 (D. Haw. May 13, 2011) (original lender and transferee Wells Fargo not "debt

collectors" under FDCPA).

However, as stated in Perry, and as recently explained by Judge Clarke, mortgage

servicers and assignees are not debt collectors only when the underlying loan is taken for

servicing or is assigned before the default.  Memmott v. OneWest Bank, FSB, No. CV-

10–3042–CL, 2011 WL 1560985, at *5 (D. Or. Feb. 9, 2011), adopted as modified, 2011 WL

1559298 (D. Or. Apr. 25, 2011).

As the assignee of the beneficial interest in the DOT, The New York Bank Mellon is

_____

York Mellon held the beneficial interest, declared the default, and accelerated the debt, and
Northwest Trustee's Service, which is no longer a defendant in the case, issued the NODES and
began conducting the foreclosure.

exempted from the definition of debt collector, but, as with the mortgage servicer, only if the underlying loan was assigned <u>before</u> any default.  <u>E.g.</u>, <u>Perry</u>, 756 F.2d at 1208 (debt collector does not include the assignee of a debt, as long as the debt was not in default at the time it was assigned).

Here, the NODES indicates that plaintiff was in default beginning in August 2008.  Ex. B to Compl.  The assignment from Wells Fargo Bank to The New York Bank Mellon occurred on December 3, 2009, Ex. C to Compl., <u>after</u> the loan was in default.  Thus, New York Bank Mellon is not exempt as a debt collector under section 1692a(6).

Defendants make no other arguments against this claim.   The FDCPA claim is dismissed except as to The New York Bank Mellon.

B.  Oregon Unfair Debt Collection Practices Act

Oregon's statute defines a debt collector as "any person who by any direct or indirect action, conduct, or practice, enforces or attempts to enforce an obligation that is owed or due to any commercial creditor, or alleged to be owed or due to any commercial creditor, by a consumer as a result of a consumer transaction."  O.R.S. 646.639(1)(g).  "Commercial creditor" is defined as "a person who in the ordinary course of business engages in consumer transactions." O.R.S.646.639(1)(c).  "Person" includes a corporation.  O.R.S. 646.639(1)(h).  A "consumer transaction" is a "transaction between a consumer and a person who sells, leases or provides property, services or credit to consumers."  O.R.S. 646.639(1)(b).

Defendants assert, without a single citation, that they are not debt collectors within the meaning of the statute.  Defts' Reply Mem. at p. 11.  The statute does not appear to contain the exceptions to the definition of a "debt collector" that are found in the FDCPA.  Under Oregon

19 - OPINION & ORDER

law, Wells Fargo Bank, Wells Fargo Home Mortgage, and The Bank of New York Mellon all appear to be debt collectors.

Defendants alternatively argue that plaintiffs still fail to state a claim because the Oregon statute lists fifteen specific ways in which a debt collector can violate Oregon law in collecting the debt and plaintiff fails to specify that defendants engaged in any of the prohibited conduct, or, to the extent plaintiff does make such allegations, she has simply copied three of the fifteen violations from the statute without tailoring the allegations to the facts of this case.

In support of the Oregon debt collection claim, plaintiff alleges that "defendants" committed unlawful debt collection practices by (1) misrepresenting their authority to foreclose on the loan; (2) attempting to or threatening to enforce a right or remedy with knowledge or reason to know that the right or remedy does not exist, or threatening to take an action which in the regular course of business they do not take; and (3) using a form of communication which simulates legal or judicial process or which gives the appearance of being authorized, issued or approved by a governmental agency, governmental official or an attorney at law when it is not in fact so approved or authorized.  Compl. at ¶ 91.  She further contends that the conduct was willful and that as a result, she suffered economic damages of at least $75,000.

As with the federal debt collection claim, the focus of this claim, at least based on plaintiff's first two allegations, appears to be that defendants violated the statute by attempting to foreclose without possessing the beneficial interest in the property.  The third allegation regarding the "form of communication" does not sufficiently identify the conduct it addresses. When that allegation is read in the context of the entire Complaint, it might be read as a challenge to the filing of the NODES because the NODES represented that The Bank of New

20 - OPINION & ORDER

York Mellon held the beneficial interest in the property and plaintiff alleges it could not lawfully do so. So understood, this allegation also focuses on the foreclosure. Thus, as with the federal debt collection claim, neither Wells Fargo Bank nor Wells Fargo Home Loan are proper defendants because neither one of them appears to have been involved in the foreclosure in any way.

I construe this claim to assert a violation of Oregon's debt collection practices statutes based on an attempt by The New York Bank Mellon to foreclose on property in which, according to plaintiff, it lacked a beneficial interest. This claim survives as to The New York Bank Mellon and is dismissed as to all other defendants.

V. Unjust Enrichment

Plaintiff alleges that she conferred a benefit upon defendants in the form of her payments structured as principal and interest under the mortgage loan. Compl. at ¶ 98. She contends that when she started having difficulty making payments, defendants placed her into a position from which she would default and they could earn substantial fee income. Id. Defendants allegedly kept her in this position for over three years, charging potentially $100,000 in fee income. Id. She alleges that defendants had a duty to help her resume performing under the loan, and yet, defendants continued accepting payments while operating under the guise of attempting to provide her assistance. Id. Instead, she contends, defendants "diverted nearly all of Plaintiff's equity and mortgage payments to their own fees." Id.

She alleges that instead of returning the "unearned and unjustified benefits," or applying the payments to her mortgage balance, defendants retained the equity and payment benefits and are now foreclosing. Id. at ¶ 99. She contends that if defendants could offer no substantive

assistance, they had a duty to foreclose upon her home within six months to limit, instead of

prolong, her losses.  Id.  They acted in bad faith.  Id.  She alleges that defendants' retention of

such benefits is inequitable under the circumstances and as such, she requests that defendants pay

the full value of the benefits she conferred since 2007, the amount of which is unknown.  Id. at ¶

100.

Unjust enrichment is an equitable claim.  Osborne v. Nottley, 206 Or. App. 201, 204–05,

136 P.3d 81, 83 (2006).  It is a theory of "quasi-contract" based on an implied contract. Summer

Oaks Ltd. P'ship v. McGinley, 183 Or. App. 645, 654, 55 P.3d 1100, 1104 (2002).  It is a

remedial device the law affords where no enforceable contract exists, but where (1) one party has

conferred a benefit on another, (2) the recipient is aware that a benefit has been received, and (3)

"under the circumstances, it would be unjust to allow retention of the benefit without requiring

the recipient to pay for it."  Id.  Furthermore, the plaintiff must demonstrate that the defendant

received the benefit under circumstances that in some sense were wrongful or inequitable, e.g.,

mistake, fraud, coercion, undue influence, duress, taking advantage of weakness, or violation of a

duty imposed by a confidential or fiduciary relationship.  Tupper v. Roan, 349 Or. 211, 223, 243

P.3d 50, 59 (2010).

Defendants argue that first, the Complaint fails to assert that plaintiff conferred a benefit

on defendants and also fails to allege how the retention of any such benefit by defendants would

be unjust.  Defendants suggest that even reading the Complaint liberally shows that defendants

received only payments that plaintiff contractually agreed to pay.  While plaintiff may be

frustrated that the fees she incurred contributed to higher payments, she still agreed to the

payments and thus, there was nothing wrongful about defendants accepting them.

22 - OPINION & ORDER

Plaintiff argues that she states a claim by alleging that her payments of principal, interest, late fees, servicing fees, modification fees, and other fees related to her loan, the forbearance agreements, and the modifications, all conferred a benefit on defendants which enriched defendants and which, ultimately, were unjust because defendants provided incompetent customer service and engaged in conduct which caused reviews of plaintiff's hardship applications to stretch more than three years and which was designed to only increase defendants' fees.

I agree with defendants. The DOT obligated plaintiff to make the payments at issue. The law implies a contract as a remedial device to allow a claim for "unjust enrichment" when no enforceable contract exists. The allegations in the Complaint demonstrate that the relationship between plaintiff and defendants was contractual and thus, a theory of unjust enrichment is inappropriate. This claim is dismissed.

VI.  Unlawful Trade Practices

Plaintiff alleges that defendants used unfair or deceptive business practices by failing to act, disclose or re-disclose, or by misrepresenting or providing fraudulent information. Compl. at ¶ 102. Plaintiff then lists nineteen separate ways in which defendants allegedly used unfair or deceptive business practices. Id.[7]

Defendants move to dismiss this claim on the basis that at the time of the underlying loan

---

[7]  Many, if not most, of the allegations in support of this claim are conclusory and subject to dismissal for that reason alone. For example, plaintiff alleges violation of trade practices by reason of "[i]ncompetent, inadequate and inefficient customer service[,]" "[l]osing documents submitted by [p]laintiffs," "[u]sing predatory lending and deceptive underwriting practices," etc. This is a common problem seen throughout the Complaint and one which the Court hopes not to see in any amended pleading.

23 - OPINION & ORDER

in 2005, and the alleged modification in 2009, Oregon's Unlawful Trade Practices Act (UTPA), did not apply to extensions of credit.

Generally, the policy of Oregon's UTPA "is to discourage deceptive trade practices and to provide a viable remedy for consumers who are damaged by such conduct." Raudebaugh v. Action Pest Control, Inc., 59 Or. App. 166, 171, 650 P.2d 1006, 1009 (1982).  "[T]he consumer may recover by alleging and proving that there was a wilful violation of the provisions of the Act and ascertainable damages as a result of the violation." Id.

O.R.S. 646.607(1) prohibits the use of any unconscionable tactic in connection with the sale, rental or other disposition of real estate, goods, or services.  At the time of the 2005 loan, and the 2009 loan modification, the version of the statute which defines "real estate, goods or services," did not apply to extensions of credit:

> [T]hose that are or may be obtained primarily for personal, family or household purposes, or that may be obtained for any purposes as a result of a telephone solicitation, and includes franchises, distributorships and other similar business opportunities, but does not include insurance.

O.R.S. 646.605(6); see Haeger v. Johnson, 25 Or. App. 131, 135, 548 P.2d 532, 535 (1976) (holding that money transactions are not within the UTPA's definition of "real estate, goods or services"); accord Lamm v. Amfac Mortg. Corp., 44 Or. App. 203, 205, 605 P.2d 730, 731 (1980) (holding that loans or money are not within the scope of the UTPA).

The statute was amended effective March 23, 2010, to include "loans and extensions of credit." O.R.S. 646.605(6) (2010).  Because any alleged violations concerning the original loan or the 2009 loan modification occurred before the inclusion of this language, they came too early to be covered by Oregon's UTPA.  Hogan v. Nw. Trust Servs., No. CV-10-6028-HO, 2010 WL

1872945 at * 8 (D. Or. May 7, 2010) (applying 2007 version of UTPA to plaintiff's claim that in 2007 defendants placed them in a loan that they could not afford and finding that UTPA did not apply to extensions of credit), aff'd, Nos. 10-35534, 10-35536, 2011 WL 2601563 (9th Cir. July 1, 2011).

At oral argument, plaintiff conceded that actions occurring before the effective date of the March 23, 2010 amendment were not subject to the UTPA.  But, she contended that the NODES and the notice of sale were generated after the date and thus, are properly asserted as violations of the UTPA.  However, given that the foreclosure has been canceled, any alleged UTPA violation based on the NODES and notice of sale is either moot, or incapable of stating a UTPA claim because there are no damages as result of the conduct.  See Feitler v. Animation Celection, Inc., 170 Or. App. 702, 708, 13 P.3d 1044, 1047 (2000) (to prevail on UTPA claim, plaintiff must show a violation of the UTPA, causation, and damage in the form of an ascertainable loss).

This claim is dismissed with prejudice as to any actions occurring before March 23, 2010.

VII.  Intentional Infliction of Emotional Distress (IIED)

Plaintiff contends that eleven different specified actions by defendants caused her extreme emotional distress, that defendants' conduct was intentional and outrageous, and that it caused her damages.  Compl. at ¶¶ 104-07.

To state an IIED claim, plaintiff must show that defendants intended to inflict severe emotional distress, that defendants' acts were the cause of plaintiff's severe emotional distress, and that defendants' acts constituted an extraordinary transgression of the bounds of socially tolerable conduct.  McGanty v. Staudenraus, 321 Or. 532, 563, 901 P.2d 841, 849 (1995); see also Babick v. Or. Arena Corp., 333 Or. 401, 411, 40 P.3d 1059, 1063 (2002) (to state an IIED

25 - OPINION & ORDER

claim under Oregon law, plaintiff must prove, <u>inter alia</u>, that defendants' actions "constituted an

extraordinary transgression of the bounds of socially tolerable conduct.") (internal quotation

omitted).

Conduct that is merely "rude, boorish, tyrannical, churlish, and mean" does not support an

IIED claim. <u>Patton v. J.C. Penney Co.</u>, 301 Or. 117, 124, 719 P.2d 854, 858 (1986). "[T]he tort

does not provide recovery for the kind of temporary annoyance or injured feelings that can result

from friction and rudeness among people in day-to-day life even when the intentional conduct

causing plaintiff's distress otherwise qualifies for liability." <u>Hall v. The May Dep't Stores Co.</u>,

292 Or. 131, 135, 637 P.2d 126, 129 (1981). Whether the alleged conduct constitutes an

extraordinary transgression of the bounds of socially tolerable conduct is a question of law for

the court. <u>Harris v. Pameco Corp.</u>, 170 Or. App. 164, 171 (2000).

In a 2008 case, the Oregon Court of Appeals explained the following parameters of the

tort:

> A trial court plays a gatekeeper role in evaluating the viability of an IIED
> claim by assessing the allegedly tortious conduct to determine whether it goes
> beyond the farthest reaches of socially tolerable behavior and creates a jury
> question on liability. . . .
>
> * * *
>
> The classification of conduct as "extreme and outrageous" depends on both the
> character and degree of the conduct. As explained in the Restatement at § 46
> comment d:
>
>> "Liability has been found only where the conduct has been so outrageous
>> in character, and so extreme in degree, as to go beyond all possible bounds
>> of decency, and to be regarded as atrocious, and utterly intolerable in a
>> civilized community."
>
> Whether conduct is an extraordinary transgression is a fact-specific

26 - OPINION & ORDER

inquiry, to be considered on a case-by-case basis, based on the totality of the circumstances. We consider whether the offensiveness of the conduct exceeds any reasonable limit of social toleration, which is a judgment of social standards rather than of specific occurrences.

House v. Hicks, 218 Or. App. 348, 358-60, 179 P.3d 730, 737-39 (2008) (internal quotations and citations omitted).

Defendants argue that plaintiff's allegations do not state an IIED claim because defendants' acts, as a matter of law, do not constitute an extraordinary transgression of the bounds of socially tolerable conduct. I agree with defendants.

Plaintiffs' factual assertions are that in the context of an arm's length commercial relationship, defendants allegedly breached a contract, misrepresented authority (by claiming to have a beneficial interest in property when plaintiff contends they did not), allegedly stalled on her loan forbearance requests in an attempt to add fees to the amount of principal and interest already owed by plaintiff, and allegedly violated various provisions of the Oregon Trust Deed Act as well as state and federal debt collection practices laws.

This alleged conduct all occurred as part of loan servicing, loan modification, debt collection, or foreclosure. While this may be stressful to the homeowner, is not outrageous in the extreme. I dismiss this claim.

CONCLUSION

Defendants' motion to dismiss [22] is granted in part and denied in part as follows: (1) plaintiff's claims for injunctive relief (Second Claim for Relief), for unlawful foreclosure (Ninth Claim for Relief), for unconscionable actions (Sixth Claim for Relief), for fraud (Seventh Claim for Relief), for slander of title (Third Claim for Relief), and for improper default/foreclosure

27 - OPINION & ORDER

notice (Eighth Claim for Relief) are dismissed without prejudice on the basis of plaintiff's

voluntary dismissal or because they are moot;

(2) plaintiff's claim for IIED (Fourteenth Claim for Relief) is dismissed with prejudice;

(3) plaintiff's claims for declaratory judgment (First Claim for Relief), for breach of the

implied duty of good faith and fair dealing (Fifth Claim for Relief), and for unjust enrichment

(Twelfth Claim for Relief), are dismissed in their entirety and without prejudice;

(4) plaintiff's claim violations of Oregon's UTPA (Thirteenth Claim for Relief), is

dismissed with prejudice for any actions occurring before March 23, 2010, and otherwise is

dismissed without prejudice;

(5) except to the extent plaintiff alleges a breach of the April 2009 loan modification

agreement as to the Wells Fargo defendants, plaintiff's breach of contract claim (Fourth Claim for

Relief) is dismissed, and the dismissal is without prejudice; and

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

28 - OPINION & ORDER

(6) except to the extent they are brought against The New York Bank Mellon for actions taken in allegedly attempting to foreclose on the property when it allegedly lacked a beneficial interest in the property, plaintiff's federal and state debt collection practices act claims (Tenth and Eleventh Claims for Relief) are dismissed.  The dismissal of the FDCPA claim as to Wells Fargo Bank is dismissed with prejudice; otherwise, the dismissal of the debt collection claims is without prejudice.

Defendants' request for judicial notice [20] is granted.

IT IS SO ORDERED.

Dated this __18th__ day of __November_____, 2011

/s/ Marco A. Hernandez_____
Marco A. Hernandez
United States District Judge

29 - OPINION & ORDER